UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----

PARDAMANDEEP KAUR BOYAL,                No. 2:09-cv-03263 MCE-KJN

    Plaintiff,

  v.                                      **ORDER**

JANET NAPOLITANO et al.,

    Defendants.

----oo0oo----

Through the present action, Plaintiff Pardamandeep Kaur Boyal ("Plaintiff") seeks redress from this Court based on the claim that Defendants Secretary of the Department of Homeland Security Janet Napolitano, Acting Chief of the United States Administrative Appeals Office ("AAO") John F. Grissom, Acting Deputy Director of the United States Citizenship and Immigration Services Michael Aytes, and United States Attorney General Eric H. Holder (collectively, "Defendants") have violated her constitutional rights by depriving her of her marital union with her husband, Sukhjinder Singh ("Petitioner").

///

///

Plaintiff alleges that Defendants' denial of Petitioner's waiver for unlawful presence was based on the erroneous determination that Petitioner was in the country unlawfully for the period of more than one year.

Presently before the Court are the parties' cross Motions for Summary Judgment and Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 56 and 12(b)(1).  Plaintiff moves for summary judgment of her claim that Petitioner was never unlawfully present in the United States. (ECF No. 19.)  Defendants move to dismiss for lack of jurisdiction or, in the alternative, seek summary judgment of Plaintiff's claim. (ECF No. 20.)  Both parties have filed oppositions to those motions.  For the reasons stated below, Plaintiff's motion is denied, Defendants' Motion for Summary Judgment is denied as moot, and Defendants' Motion to Dismiss is granted.

**BACKGROUND**

Petitioner is originally from India, and came to the United States to marry Pramil K. Singh, who is not a party to this action. Ms. Singh is a citizen of the United States, and took steps to confer upon Petitioner's permanent resident status as her lawful husband.  On April 15, 2002, Ms. Singh, as Petitioner's citizen fiancé, filed a Petition for Alien Fiancé on his behalf, which was approved by Defendants on July 18, 2002.  Petitioner entered the country legally on the alien fiancé visa ("K1 visa") on March 7, 2003, and they were married on March 30, 2003 in compliance with federal immigration requirements for all K1 visa holders.

Shortly thereafter, Ms. Singh petitioned to register permanent residence or adjust status. However, this union quickly disintegrated ending in divorce. Six months after filing her application to register permanent residence, Ms. Singh withdrew her petition. On January 16, 2004 the couple divorced, and the following month, Petitioner married Plaintiff, also a citizen of the United States. Petitioner remained in the United States throughout this period of time.

On April 9, 2004, Petitioner's previously withdrawn application to register permanent residence or adjust status was officially denied because he failed to appear at a hearing scheduled on the same day. On Petitioner's behalf, Plaintiff filed a Petition for Alien Relative on August 9, 2004, which was approved shortly thereafter. Petitioner departed the United States on May 10, 2005 in order to seek lawful admission to the United States as Plaintiff's spouse. In a somewhat confusing turn, Petitioner subsequently completed an Application for Waiver of Grounds of Inadmissibility, which he filed on December 23, 2005.[1]

Petitioner's application was denied on July 17, 2006 by the Officer in Charge, on the grounds that Petitioner failed to establish extreme hardship to Plaintiff. The Officer in Charge further found that Petitioner accrued unlawful presence from April 9, 2004, when his application to adjust status filed and withdrawn by Ms. Singh was denied, through May 10, 2005. (Compl. Ex. A at 3.)

---

[1] Applications to waive inadmissibility must demonstrate "extreme hardship" to a qualifying citizen family member in order to be granted. 8 U.S.C. § 1182(a)(9)(B)(v).

3

Petitioner filed an appeal with the Administrative Appeals Office ("AAO"), which was dismissed on February 17, 2007. The AAO found that based on Plaintiff's emotional and psychological problems, she had demonstrated extreme hardship if separated from her husband, but she had not demonstrated extreme hardship to her if she instead moved to India to be with her husband. (Compl. Ex. A at 4.)

Ten days after the appeal was dismissed, Plaintiff filed a Motion to Reopen/Reconsider with the AAO and submitted additional evidence to demonstrate hardship if she were to move to India. In this motion, Plaintiff argued that the AAO's decision was abuse of discretion because it was based on additional criteria not required by the INA or regulations. The additional criteria considered whether Plaintiff would suffer extreme hardship if she were to leave the United States to be with her husband, rather than a more general showing of extreme hardship to Plaintiff. (Compl. Ex. B at 7-8.) In her motion, Plaintiff also submitted new facts to demonstrate that she would meet the additional criteria if it were found to be within the AAO's discretion to consider. (Id. at 8-9.)

On September 2, 2009, the AAO granted Plaintiff's Motion to Reconsider, but dismissed the appeal because Plaintiff had failed to overcome the initial bases for denial. Plaintiff now contends that a waiver of grounds of inadmissibility should never have been required, as Defendants' initial determination that Petitioner was unlawfully present in the country for a period of over a year was erroneous, and hence Petitioner was never inadmissible to lawfully remain in the United States.

///

///

Plaintiff alleges she has exhausted all administrative remedies to the extent possible, and seeks judicial intervention to require Defendants to vacate their September 2, 2009 decision denying Petitioner admission to the United States based on the waiver application.

**STANDARD**

Rule 12(b)(1) permits the dismissal of a civil matter if a party can establish that the court lacks subject matter jurisdiction over the claim.  Since federal courts are presumptively without jurisdiction over civil actions, the burden of establishing jurisdiction rests upon the party asserting jurisdiction.  See Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (explaining that either diversity of citizenship or a federal question is required for federal court to assert subject matter jurisdiction over a case); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (the burden of establishing federal jurisdiction lies upon the party asserting jurisdiction). The "objection that a federal court lacks subject-matter jurisdiction" under Rule 12(b)(1), may "be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."  Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).  "Nothing is to be more jealously guarded by a court than its jurisdiction."  In re Mooney, 841 F.2d. 1003, 1006 (9th Cir. 1988) (overruled on other grounds by Partington v. Gedan, 923 F.2d 686 (9th Cir. 1991)).

///

1 Subject matter jurisdiction requirements can never be forfeited or
2 waived.  United States v. Cotton, 535 U.S. 625, 630 (2002).
3   In moving to dismiss for lack of subject matter jurisdiction,
4 the challenging party may either make a "facial attack" on the
5 allegations contained in the complaint, or take issue with subject
6 matter jurisdiction on a factual basis ("factual attack").
7 Thornhill Publ'g Co. v. Gen. Tel. & Elect. Corp., 594 F.2d 730, 733
8 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n,
9 549 F.2d 884, 891 (3d Cir. 1977).  If the motion constitutes a
10 facial attack, the court must consider the factual allegations of
11 the complaint to be true.  Williamson v. Tucker, 645 F.2d 404, 412
12 (5th Cir. 1981); Mortensen, 549 F.2d at 891.  In a factual attack,
13 however, "no presumptive truthfulness attaches to plaintiff's
14 allegations, and the existence of disputed material facts will not
15 preclude the trial court from evaluating for itself the merits of
16 jurisdictional claims."  Thornhill, 594 F.2d at 733 (quoting
17 Mortensen, 549 F.2d at 891).
18   If the Court grants a motion to dismiss a complaint, it must
19 then decide whether to grant leave to amend.  Generally, leave to
20 amend should be denied only if it is clear that the deficiencies of
21 the complaint cannot be cured by amendment.  Broughton v. Cutter
22 Labs., 622 F.2d 458, 460 (9th Cir. 1980).
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**ANALYSIS**

**A.   Doctrine of Consular Non-Reviewability**

The federal court has no jurisdiction to review a consular official's decision to withhold a visa, as it is a matter of sole discretion for the Attorney General.  Bustamante v. Mukasey, 531 F.3d 1059, 1061 (9th Cir. 2008) (citing Kleindienst v. Mandel, 408 U.S. 753 (1972)).  A limited exception to the doctrine of consular non-reviewability is if the denial of a visa implicates constitutional rights of an American citizen.  Id.  Freedom of personal choice in matters of marriage and family life is a liberty interest protected by the Due Process Clause.  Cleveland Bd. Of Educ. v. LaFleur, 414 U.S. 632, 639-40 (1974).  There is, however, no constitutionally protected right to live with one's spouse. Morales-Izquierdo v. Dep't of Homeland Sec., 600 F.3d 1076, 1091 (9th Cir. 2010); Blackwell v. Thornburgh, 745 F. Supp. 1529, 1538-39 (C.D. Cal. 1989).

Plaintiff argues that Defendants' denial of Petitioner's waiver of grounds of inadmissibility resulted in the deprivation of her marital union with Petitioner, and cites Bustamante as precedent recognizing Constitutional protection for such an injury. Bustamante noted that the "freedom of personal choice in matters of marriage and family life" is protected by the Due Process Clause in the context of admission and exclusion of aliens.  531 F.3d at 1062.  Further, in Din v. Clinton, the Northern District of California found that there is a protected liberty interest in personal choice of matters of marriage and family life in the context of a denial of visa.

1  No. 10-0533, 2010 WL 2560492 at *3 (N.D. Cal. Jun. 22, 2010).
2  However, neither of these cases is on-point, nor are they
3  persuasive in the instant case.
4       Substantive due process protects an enumerated list of
5  constitutionally protected fundamental rights. Washington v.
6  Glucksberg, 521 U.S. 702, 719-20 (1997) (listing the specified
7  fundamental rights currently protected).  Any additional
8  fundamental rights not on the list and subsequently created must be
9  "'implicit in the concept of ordered liberty', such that 'neither
10 liberty nor justice would exist if they were sacrificed.'"  Id. at
11 721 (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)).
12      Protections of procedural due process, however, do extend
13 beyond these limitations to include property interests, such as
14 welfare benefits and public employment.  Bd. of Regents of State
15 Colleges v. Roth, 408 U.S. 564, 576-77 (1972).  Whereas substantive
16 due process protects against government actions which deprive
17 citizens of certain rights, regardless of the fairness of
18 procedures used, procedural due process protects citizens not from
19 the deprivation itself, but only the mistaken or unjustified
20 deprivation of the asserted right.  Zinermon v. Burch, 494 U.S.
21 113, 125 (1990).
22      In both Bustamante and Din, the plaintiffs alleged procedural
23 due process violations.  They did not claim a substantive due
24 process protection for their right to reside together as spouses,
25 but merely for constitutionally adequate procedures before the
26 government denies that right.
27 ///
28 ///

1 Here, Plaintiff has instead claimed she has a substantive due
2 process right, which imputes heightened protections and requires a
3 different analysis than procedural due process.  Plaintiff does not
4 allege in her complaint that Defendants failed to provide due
5 process of law before depriving them of the claimed right.  Rather,
6 Plaintiff alleges that Defendants arrived at an erroneous
7 conclusion, and in doing so, deprived her and her husband of the
8 fundamental right to live together.  Procedural due process does
9 not protect against erroneous determinations, but only improper
10 procedures used in arriving at an erroneous determination.
11      Because procedural due process applies to many more individual
12 rights than substantive due process, and substantive due process
13 offers greater protection from deprivation, these two cases cannot
14 be directly analogized to the present case.  The courts' acceptance
15 of procedural due process protection in the marriages at issue in
16 the Bustamante and Din cases is not persuasive in the face of clear
17 case law holding that there is no substantive due process right to
18 reside with one's spouse.  Morales-Izquierdom, 600 F.3d at 1091
19 (holding that the Constitution provides plaintiff with no
20 fundamental right to reside in the United States simply because his
21 spouse is a citizen); Blackwell, 745 F. Supp. at 1538-39 (The
22 Constitution does not recognize a citizen spouse's right to have
23 his or her alien spouse remain in this country).
24      Further, even if this Court were to find Plaintiff has a
25 constitutional right to reside with her spouse in the United
26 States, there is no violation if a citizen's liberty interest is
27 outweighed by competing state interests.
28 ///

1  Compassion in Dying v. Washington, 79 F.3d 790, 799 (9th Cir. 1996)
2  (rev'd on other grounds by Washington v. Glucksberg, 521 U.S. 702
3  (1997)).  In Compassion in Dying, the court analyzed the
4  limitations of a liberty interest to refuse medical treatment,
5  illustrating the balance between competing individual and state
6  interests.[2]  Id.   The case noted that where the balance favored a
7  state's interest, regulation and limitation of the liberty interest
8  is Constitutional.  Id.  Though a broader right may exist to
9  personally control matters of the marriage and family, Plaintiff's
10 specific right to reside with her spouse in the United States is
11 greatly outweighed by Congress's broad powers to regulate matters
12 of immigration.
13      Finally, any rights Plaintiff does claim to her marital union
14 were not infringed upon by Defendants.  Plaintiff made no claim
15 that she specifically has a fundamental right to live with her
16 husband in the United States.  Defendants have in no way precluded
17 Plaintiff and Petitioner from living together in another country.
18 In fact, Defendants appeared to invite this arrangement, as the
19 denial of Petitioner's waiver of grounds of inadmissibility was in
20 part based upon the fact that Plaintiff could live in India with
21 her husband.  Plaintiff has no constitutional right to marital
22 union with her spouse, but even if she did, Defendants have not
23 violated this right by precluding the union in this country.

---

[2] The court compared Washington v. Harper, 494 U.S. 210, 221-22 (1990) (finding prisoners possess a significant liberty interest in avoiding unwanted administration of antipsychotic drugs) with Jacobson v. Massachusetts, 197 U.S. 11, 39 (1905) (finding the plaintiff's liberty interest in refusing a smallpox vaccine was not violated as it was outweighed by the state's interest in preventing disease).

In the instant case, the Court recognizes no violation of an individual's constitutional right to personal choice in matters of marriage where it conflicts with the State's sweeping powers to exclude aliens. Oceanic Navigation Steam Co. v. Stranahan, 214 U.S. 320, 339 (1909) ("over no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens); Kleindienst v. Mandel, 408 U.S. 753, 766 (1972) ("The Court without exception has sustained Congress' plenary power to make rules for admission of aliens.") (internal citations omitted). Plaintiff has suffered no constitutional injury, and as such, the Court lacks jurisdiction to resolve her claim. Defendants' Motion to Dismiss on the ground of consular non-reviewability is granted.

**B.   Failure to Exhaust Administrative Remedies**

The federal court has no jurisdiction to review a final order of removal unless the "alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 252(d)(1). The Ninth Circuit has permitted an exception to this requirement where the plaintiff can show that pursuing further administrative remedies would be "futile." Sun v. Ashcroft, 370 F.3d 932, 941-42 (9th Cir. 2004) (affirming El Rescate Legal Serv., Inc. v. Executive Office of Immigration Review, 959 F.2d 742, 747 (9th Cir. 1991)). "Futility" is found where the agency's position on the question at issue "appears already set," and it is "very likely" what the result will be. El Rescate Legal Serv., Inc., 959 F.2d at 747.

11

1 Even where the agency has the authority to rule on the issue,
2 exhaustion is not required when "it is unrealistic to expect that
3 [the agency] would consider substantial changes . . . at the behest
4 of a single [applicant] raising a constitutional challenge. . . ."
5 Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 330 (1976)).

6      Plaintiff acknowledges that she has not yet brought before the
7 proper agencies her claim arguing that the K1 visa has no
8 expiration, and that Petitioner should not have been declared as
9 unlawfully residing in the United States.  However, Plaintiff's
10 sole defense to the requirement is that bringing such a claim would
11 have been futile "given the current trend" of more restrictive
12 immigration laws, and that a determination of this issue could
13 affect many former K1 visa holders.  (Pl. Reply to Mot. to Dismiss
14 at 9.)

15      Little case law exists to fully interpret and define the
16 futility exception.  Other circuits have interpreted 8 U.S.C.
17 § 1252(d)(1) as creating mandatory jurisdiction, and have permitted
18 no exceptions to the exhaustion requirement.  See Booth v. Churner,
19 532 U.S. 731, 741 n.6 (2001) (instructing courts not to read
20 futility into statutory exhaustion requirements where Congress has
21 provided otherwise).  However, cases that do analyze the futility
22 argument have permitted the exception only where the agency has
23 announced and reaffirmed a holding counter to Plaintiff's argument.
24 ///
25 ///
26 ///
27 ///
28 ///

1 <u>El Rescate Legal Services, Inc.</u>, 959 F.2d at 747 (the BIA had
2 announced and reaffirmed its policy regarding plaintiff's
3 particular argument and its understanding of the due process
4 requirements); <u>SAIF Cor/Oregon Ship v. Johnson</u>, 908 F.2d 1434, 1441
5 (9th Cir. 1990) (The Board's position on the issue appeared set
6 because it had "held unequivocally" against plaintiff's argument
7 such that it was very likely what the result would have been).
8      In the instant case, the Court cannot find that Defendants
9 have foreclosed Plaintiff's claim.  In fact, Plaintiff's argument
10 for futility rests on a "lack of guidance on this issue," rather
11 than an abundance of guidance which would lead Defendants to only
12 one result.  (Pl.'s Mot. for Summ. Judg. at 9.)  Because the issue
13 of the K1 visa's expiration has not been addressed up to this
14 point, this Court would have to rely on pure speculation to
15 determine how Defendants would rule on the issue.  Indeed, it is
16 because of this dearth of guidance that Defendants should be given
17 the chance to interpret their own rules and regulations without
18 judicial interference.  This Court has no jurisdiction to determine
19 the K1 visa's expiration date, therefore Defendants' Motion to
20 Dismiss for failure to exhaust is granted.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

13

**CONCLUSION**

As a matter of law and for the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 20) is GRANTED without leave to amend. Plaintiff's Motion for Summary Judgment (ECF No. 19) is DENIED as moot. Defendant's alternative Motion for Summary Judgment is also DENIED as moot. The Clerk is ordered to close the case.

IT IS SO ORDERED.

DATE:  March 9, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE